

UNITED STATES OF AMERICA

# Congressional Record

PROCEEDINGS AND DEBATES OF THE 78th CONGRESS
FIRST SESSION

## VOLUME 89—PART 2

MARCH 2, 1943, TO APRIL 5, 1943
(PAGES 1459 TO 2940)

UNITED STATES GOVERNMENT PRINTING OFFICE, WASHINGTON, 1943

Case 1:18-cv-00102-LCB-JEP   Document 30-1   Filed 12/21/18   Page 1 of 2

January 1 of one year and the date when his return was due in the following year the income for such period was not subject to tax, even though he may have made a return of income before his death in advance of the due date (T. D. June 9, 1865, 2 Internal Revenue Record 54). This rule was not changed until 1867, when it was held that such income was subject to the tax and should be returned by the executor or administrator (T. D. Apr. 6, 1867, 5 Internal Revenue Record 109; T. D. Jan. 1, 1868, 7 Internal Revenue Record 59). See also *Mandell* v. *Pierce* (C. C. D. Mass. 1868, 16 Fed. Cas. 576). The change was doubtless prompted by two important considerations; first, the taxes expired by definite limitation within a very few years; and, second, persons whose tax had been withheld at the source would already have paid their tax up to the date of death. At any rate, the change did not involve any modification in the concept of the income tax as an excise tax based on income.

After a lapse of about a quarter of a century Congress again passed an income-tax law. The act of 1894 (28 Stat. 509, 553; Aug. 27, 1894) provided for a tax to be levied, collected, and paid "from and after" January 1, 1895, "and until the 1st day of January 1900" (sec. 27). Like the Civil War acts it provided that the tax should be based on the "income received in the preceding calendar year." Although the Supreme Court held this portion of the act to be unconstitutional, it still recognized that the income tax was in essence an excise tax. The Court said that a tax on income from business, privileges, or employments, standing by itself, would be valid as an excise tax; but the tax on investment income was held to be invalid because the Court regarded a tax based on income from property as a tax on the property itself and therefore a direct tax which must be apportioned among the States (*Pollock* v. *Farmers' Loan and Trust Co.* (1895), 157 U. S. 429; 158 U. S. 601). The Court said that to sustain a portion of the tax while declaring the rest invalid, "would leave the burden of the tax to be borne by professions, trades, employments, or vocations; and in that way what was intended as a tax on capital would remain, in substance, a tax on occupations and labor. We cannot believe that such was the intention of Congress" (158 U. S. 601, 637). So the entire portion of the act relating to income tax was declared invalid.[1]

---

[1] It must be remembered that the Court was not appraising economic theories, but was construing provisions of the Constitution. The first related to the power of Congress:

"To lay and collect taxes, duties, imposts, and excises, to pay the debts and provide for the common defence and general welfare of the United States; but all duties, imposts, and excises shall be uniform throughout the United States" (art. I, sec. 8, subdiv. 1).

The second was the provision that:

"No capitation, or other direct, tax shall be laid, unless in proportion to the census of enumeration herein before directed to be taken" (art. I, sec. 9, subdiv. 4).

Thus the Constitution made a distinction between "taxes" on the one hand, and "duties, imposts, and excises" on the other. Uniformity was required in the case of the latter, whereas apportionment according to population was required only in the case of "taxes." The only taxes generally regarded as "direct" were poll taxes and taxes on property. The only direct taxes which had been imposed by Congress prior to 1894 were taxes on lands, houses, and slaves. See Foster and Abbott, A Treatise on the Federal Income Tax under the act of 1894, pp. 27 ff. The Court had no difficulty in classifying a tax on income as an excise tax. Its objection to the act of 1894 was doubtless based on the theory that a tax on rents was not in reality an income tax but was a direct tax on lands and buildings. (See Foster and Abbott, op. cit., pp. 117–118.)

[2] That such is the case is clearly indicated by the recent provision in the Revenue Act of 1942 which allows deductions for expenses incurred in the management of investments (sec. 121). The retroactivity of this provision suggests not merely the declaration of a new policy but the recognition of a fundamental principle.

---

There are still those who think that in this case the Court went further than necessary in treating a tax based on income from property as a tax on property itself, and that in any event the excise-tax principle should have been applied to rents and other investment income, as was done under the Civil War acts. In other words, the making and holding of investments, while perhaps not technically a business, is, at least, a kind of activity or privilege which can properly be subjected to an excise tax measured by reference to the income derived therefrom.

That investment income may be included as a part of the basis for measuring an excise tax was recognized by Congress in the act of August 5, 1909 (36 Stat. 11, 112). This act provided "That every corporation * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation, * * * equivalent to 1 percent upon the entire net income over and above $5,000 received by it from all sources during such year, exclusive of amounts received by it as dividends upon stock of other corporations * * * subject to the tax hereby imposed; * * *." Certain corporations, such as religious, charitable, and educational organizations, etc., were specifically exempted from the tax.

The tax imposed by this act was really an income tax in that it was based on net income, but was given the correct designation of "excise tax." It was imposed with respect to carrying on or doing business; and it should be noted that the basis was net income from all sources, except dividends from other corporations subject to the tax. Such dividends were excepted not because they constituted investment income but because they represented income which had already been taxed. The sole test of taxability under this act was whether a corporation was engaged in business. If it was so engaged, then all the income (except dividends), including investment income as well as strictly business income, was used in measuring the tax. The Supreme Court held that the fact that the tax was measured by net income, and that income from nontaxable property or property not used in business was included in computing net income, did not prevent the tax from being construed as an excise tax which did not require apportionment. *Flint* v. *Stone Tracy Co. et al.* ((1911) 220 U. S. 107).

So far as the objections raised in the Pollock case are concerned, the principle applied to corporations under the act of 1909 with the approval of the Supreme Court might have been extended to individuals engaged in business. In that way investment income of most individuals as well as of corporations could doubtless have been brought under the terms of the act. And the field of income could have been completely covered by applying the principle that the ownership and management of investment property is an activity or privilege with respect to which Congress may impose an excise.[2]

However that may be, Congress chose to remove all doubt by an amendment to the Constitution. The resolution embodying the proposed amendment (S. J. Res. 40, 36 Stat. 184; 61st Cong., 1st sess.) was deposited in the Department of State on July 31, 1909, a few days before the act of 1909 was approved by the President. The amendment was duly ratified and became effective as the sixteenth amendment on February 25, 1913. (Secretary of State's Certificate of Adoption, 37 Stat. 1785).

> The sixteenth amendment authorizes the taxation of income "from whatever source derived"—thus taking in investment income—"without apportionment among the several States." The Supreme Court has held that the sixteenth amendment did not extend the taxing power of the United States to new or excepted subjects but merely removed the necessity which might otherwise exist for an apportionment among the States of taxes laid on income whether it be derived from one source or another.[3] So the amendment made it possible to bring investment income within the scope of a general income-tax law, but did not change the character of the tax. It is still fundamentally an excise or duty with respect to the privilege of carrying on any activity or owning any property which produces income.
>
> The income tax is, therefore, not a tax on income as such. It is an excise tax with respect to certain activities and privileges which is measured by reference to the income which they produce. The income is not the subject of the tax: it is the basis for determining the amount of tax.[4]

The purpose of the income tax is to raise revenue in the year of its levy. It is a method by which some of us make annual payments on account of the governmental expenses and the public debt of all of us—contributions to a common fund to preserve the blessings of liberty. The great French political philosopher and jurist, Montesquieu, stated the fundamental principles of taxation as follows:

"The revenues of the State are a portion that each subject gives of his property in order to secure, or to have the agreeable enjoyment of, the remainder." (Spirit of Laws, book XIII, chap. 1.)

The income tax is now a permanent part of our tax structure, and is designed to provide for such contributions, or payments, year after year, indefinitely. The tax "for" any given year is the tax which is to provide revenue for that year. Strictly speaking, then, the "1942 income tax" was the tax payable in 1942; and the "1943 income tax" is the tax payable in 1943.

The amount of the payments for any year is determined by applying certain rates to a specified basis. Both of these factors are matters of legislative policy. Congress may fix any rates which are not confiscatory and may adopt any basis which is reasonable. Hitherto the previous year's income has been used as the basis. But the basis, as well as the rates, may be changed at any time. In these matters of policy, the Constitution, both before and since the Sixteenth Amendment, has left to Congress practically unrestricted freedom of choice.[5]

Under our existing Federal income-tax law which has been operating for many years, the amount of income tax payable in any year by an individual taxpayer is based, not upon the income of the taxpaying year, but upon the income of the preceding year. This method whereby

---

[3] *Brushaber* v. *Union Pacific Railroad Co.* ((1916) 240 U. S. 1); *William E. Peck and Co.* v. *Lowe* ((1918 247 U. S. 165); *Eisner* v. *Macomber* ((1920) and 252 U. S. 189).

[4] If the tax should be construed as a tax on income as a specific fund the disappearance of the fund before the date of assessment would prevent the collection of the tax. (See Foster and Abbott, op. cit., p. 85.)

[5] "If the income is merely the measure of the tax, it is clearly quite immaterial whether the income that is adopted as a measure is that of the past, or of the present, or of the future, provided only it is practically ascertainable." (Foster and Abbott, op. cit., p. 87.)

Case 1:18-cv-00102-LCB-JEP   Document 30-1   Filed 12/21/18   Page 2 of 2